IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRAY INTERNATIONAL, INC.,           §
                                    §
          Plaintiff,                §
                                    §
v.                                  §          CIVIL NO. H-02-0098
                                    §
COMPUTER ASSOCIATES                 §
INTERNATIONAL, INC.,                §
                                    §
          Defendant.                §

## MEMORANDUM OPINION ON RECONSIDERATION

On September 30, 2005, the court issued a Memorandum and Order granting in part and denying in part Defendant's summary judgment motion.[1]  Shortly thereafter, the parties consented to trial before the undersigned magistrate judge.[2]  In preparation for trial, the undersigned held a pretrial conference with the parties and entertained arguments concerning what issues remained for trial. During the course of that hearing, the court became concerned that the trial issues had not been fleshed out completely.  Therefore, the court found it necessary to revisit aspects of the September 30, 2005, Memorandum and Order.

On December 1, 2005, the court notified the parties by telephone of its quandary and requested pretrial briefing on the application of a bad faith test to the limitation of liability provision of the parties' contract and on any other portion of the

---

[1]      Docket Entry No. 132.

[2]      See Order to Transfer, Docket Entry No. 137.

Memorandum and Order that the parties felt deserved reconsideration.  The parties complied by filing memoranda on December 5, 2005.  After consideration of the parties' arguments and the greater weight of legal authority, the court finds it necessary to revise its rulings on summary judgment as explained below.

## I.   Summary of the September 30th Memorandum and Order

The court found that the software license agreement entered into by Plaintiff and Defendant on January 9, 1996, governed the continuing relationship between the parties.  The agreement contained a "Limited Warranty" clause and a "Warranty and Liability Limitations" clause.  Within the limited warranty clause, the agreement expressly warranted that the product would "operate according to the specifications published by CA for the Licensed Program."

In deciding how these provisions impacted Plaintiff's causes of action, the court first analyzed a section of the Texas Uniform Commercial Code ("UCC"), which reads:

> (a) Subject to the provisions of Subsections (b) and (c) of this section and of the preceding section on liquidation and limitation of damages,
>
> > (1) the agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and
> > (2) resort to a remedy as provided is optional

2

> unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> (b) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.
>
> (c) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Tex. Bus. & Com. Code § 2.719. The court concluded that subsections (b) and (c) of the code section operate independently; so that, even if a contract's exclusive remedy fails of its essential purpose, a separate clause limiting liability for consequential damages remains viable, that is, unless it is unconscionable.

From that point, the court analyzed the consequential damages limitation at issue in this case and concluded that it was neither procedurally nor substantively unconscionable. Despite this conclusion, the court imposed an additional test for the validity of a limitation of liability contract provision. Relying on a handful of out-of-circuit cases and Corbin on Contracts, the court found "the 'bad faith' test to be a sensible rule [that] should be applied to the case at bar." Finding a fact issue as to whether Defendant "was dilatory in curing the defect or acted in bad faith[,]" the court denied summary judgment on the issue of consequential damages.

Turning to Plaintiff's claims for breach of express warranty, the court found factual disputes precluded summary judgment on Plaintiff's claim that Defendant breached its express warranty that the software would operate according to the specifications published by Defendant.  However, the court granted Defendant summary judgment on Plaintiff's claims for breach of implied warranties of merchantabiility and fitness for a particular purpose because the parties' agreement sufficiently disclaimed all such warranties.  As a final issue related to Plaintiff's breach of contract claims, the court found sufficient evidence of direct damages to warrant a trial.

Turning next to Plaintiff's claims for negligence and breach of an implied duty to perform repair and modification services in a good and workmanlike manner, the court found that they could not survive under Texas law.  Although the court also granted summary judgment on Plaintiff's common law fraud, negligent misrepresentation, and negligent inducement, the court characterized a portion Plaintiff's fraud allegations as a claim of string-along fraudulent inducement.  Only this aspect of Plaintiff's fraud claims was legally and factually sufficient to survive summary judgment.

## II.  Pretrial Interpretations and Arguments

According to the parties' representations at the pretrial hearing, they agree that the only remaining causes of action are:

4

1) breach of the express warranty that the software would operate according to the specifications published by Defendant; 2) breach of contract regarding best efforts to cure the program defect; and 3) string-along fraud based on Defendant's failure to disclose the defect in the program, which induced Plaintiff to pay additional amounts for licenses and software.  The parties also agreed that, according to the court's Memorandum and Order, Plaintiff's opportunity for consequential damages depended on Plaintiff's evidence of Defendant's bad faith or dilatory performance in repairing the defect or, alternatively, on Plaintiff's success on the string-along fraud claim.

By invitation of the court, Plaintiff challenges the court's prior decision to read subsections (b) and (c) of the above-quoted Texas UCC provision as independent.   Plaintiff argues that, according to substantial authority, when an exclusive remedy fails of its essential purpose, the seller's limitation on consequential damages also fails.  If this court should accept the independent approach over Plaintiff's dependent interpretation, Plaintiff contends that the Memorandum and Order correctly allowed a bad faith exception to the validity of a limitation of liability provision.  Plaintiff points to the duty of good faith imposed by the Texas UCC on the performance of contractual duties.[3] Plaintiff suggests that the duty of good faith overlays the Texas UCC's

---

[3]    See Tex. Bus. & Com. Code § 1.304.

5

limitation on liability provision, giving the buyer a way out of its agreement to limit consequential damages when the seller acts in bad faith. Therefore, Plaintiff suggests that the court utilize the Texas UCC definition of "good faith" as the basis for the jury question.

Naturally, Defendant disagrees with different aspects of the court's Memorandum and Order. Defendant agrees with the court that the subsections on limitation of remedy and limitation of liability clauses are independent. However, Defendant argues that the Texas UCC contains no provision suggesting that bad faith performance can invalidate either type of clause. Defendant insists that the language of subsection (c) of section 2.719 allows the invalidation of a limitation of liability clause only if the clause was unconscionable at the time that the contract was made. According to Defendant, this inquiry is totally unrelated to the duty of good faith and fair dealing. The other aspect of the opinion with which Defendant disagrees concerns Plaintiff's string-along fraud claim. Defendant contends that the allegations do not give rise to liability separate from that for breach of contract and, therefore, cannot be pursued under a fraud theory. Finally, Defendant continues to argue that Plaintiff has no evidence of direct damages.

### III.  Analysis

**<u>Contract Issues</u>**

The parties do not dispute that the Texas UCC applies to licenses of software such as the one in this case.  <u>Cf.</u> <u>Hou-Tex, Inc. v. Landmark Graphics</u>, 26 S.W.3d 103, 108 n.4 (Tex. App.–Houston [14th Dist.] 2000, no pet.).  As noted above, the Texas UCC honors agreements between contracting parties that limit or alter the measure of damages recoverable, even to the extent of allowing a single remedy to the exclusion of all others.  Tex. Bus. & Com. Code § 2.719(a).  However, should the exclusive remedy "fail of its essential purpose," remedies provided by the Texas UCC may be available.  <u>Id.</u> at § 2.719(b).  The Texas UCC also recognizes the parties' authority to limit liability for consequential damages, "unless the limitation or exclusion is unconscionable." <u>Id.</u> at § 2.719(c).

The court agrees with the Memorandum and Order that the viability of a provision limiting liability for consequential damages is not dependent on the success of the remedy in the limited warranty clause.  The court also agrees that neither the contract as a whole nor the limitation of liability clause is unconscionable or in violation of Texas public policy.  However, the court disagrees with the Memorandum and Order on the bad faith exception to enforcement of the limitation of liability clause. Such an exception is unsupported by Texas law.

Plaintiff's arguments in support of the bad faith exception are unavailing.  The court acknowledges that an obligation of good faith permeates the performance and enforcement of every contract or duty under the Texas UCC.  Id. at § 1.304.  However, the absence of good faith in the performance of contractual duties constitutes a breach of contract, not a basis for invalidating any or all of the remaining contract provisions.  See id. at § 1.304, cmt. at 1. No legal authority supports the position that a breach due to an absence of good faith performance (or, for that matter, due to bad faith performance) is a heightened variety of breach that increases the nonbreaching party's right to recovery.  It is simply a breach.

The good faith duty is entirely separate from and does not affect the enforceability of a contractual agreement limiting liability for consequential damages.  The Texas UCC could not be clearer that the only exception to the enforcement of such an agreement comes into play if the clause or contract is unconscionable.  Case law to the contrary is sparse and unpersuasive, and, to the extent it could be considered the common law of Texas,[4] it is displaced by the section § 2.719(c) of the

_____

[4]   Texas common law clearly would not support the imposition of a bad faith exception on mutually agreed upon limitations of liability.  See Global Octanes Tex., L.P. v. BP Exploration & Oil, Inc., 154 F.3d 518, 521 (5th Cir. 1998)(applying Texas law and honoring the parties' agreement to limit liability); Arnold v. Nat'l County Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987)(declining to impose an implied duty of good faith and fair dealing in contracts absent a special relationship between the parties); Head v. U.S. Inspect DFW, Inc., 159 S.W.3d 731, 747-48 (Tex. App.-Fort Worth 2005, no pet.)(holding limitation of liability clauses to be enforceable if not unconscionable or otherwise contrary to public policy); Cole v. Hall, 864 S.W.2d 563, 568 (Tex. App.-Dallas 1993, writ dism'd w.o.j.)(stating that, absent a

8

Texas UCC.  <u>See</u> Tex. Bus. & Com. Code § 1.103(b)(indicating that common law supplements the Texas UCC except where it is displaced by a particular provision).

In support of the bad faith exception, the Memorandum and Order cites <u>Corbin on Contracts</u> and four nonbinding court opinions. Individually and collectively, these legal authorities provide insufficient basis for imposing, under Texas law, a bad faith exception to the enforcement of a limitation of liability provision.  The court examines each.

The treatise states that clauses limiting liability are not effective when the benefitting party "acts fraudulently or in bad faith."  <u>Corbin on Contracts</u> (2003) § 85.18 (formerly § 1472).  No cite is given in the treatise for that remark, but a case is cited as an example.  <u>See</u> <u>id.</u>  The case is a 1949 Rhode Island Supreme Court decision based on a duty of fair dealing implied by Rhode Island law.  <u>Psaty & Fuhrman v. Hous. Auth. of City of Providence</u>, 68 A.2d 32, 36 (R.I. 1949).  As the Rhode Island court did not interpret the UCC and applied law directly contrary to Texas common law, it carries no weight in deciding how the Texas Supreme Court would decide the issue facing this court.

The Memorandum and Order cites a 1978 Ninth Circuit opinion as supporting recovery under a bad faith exception.  The quote

---

special relationship between contracting parties, any duty to act in good faith
is contractual in nature, not tortious).

9

selected for this purpose is, "The seller . . . did not ignore his obligation to repair; he simply was unable to perform it." S.M. Wilson & Co. v. Smith Int'l, Inc., 587 F.2d 1363, 1375 (9th Cir. 1978).   The quote, in context, loses any significance it may seem to carry for the pending case.   In deciding that the buyer was not entitled to consequential damages because the contractual agreement to limit such damages was not unconscionable, the Ninth Circuit analyzed the relative bargaining power of the parties and the characteristics of the contract.   Id.   The court then made the above-quoted statement and continued:

> This is not enough to require that the seller absorb losses the buyer plainly agreed to bear.  Risk shifting is socially expensive and should not be undertaken in the absence of a good reason.   An even better reason is required when to so shift is contrary to a contract freely negotiated.

Id.   Although the court hinted that a seller may be denied the protection of a limited liability provision if its default was "so total and fundamental" as to warrant that it be expunged, the court fell short of establishing a "bad faith" test for making such a determination.   In fact, the Ninth Circuit did not use the term "bad faith" at all, limited its holding to the facts of that case, discussed the issue in the context of whether a consequential damage bar survives a failure of limited repair remedy to serve its essential purpose, and based its decision on California law.

Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081 (3d Cir. 1980), also provides little insight into the law

10

applicable in this case.  That case was governed by the New Jersey UCC.  Id. at 1084-85.  In the course of reaching its conclusion that "nothing in the formation of the contract or the circumstances resulting in failure of performance" made the provision excluding consequential damages unconscionable, the court commented, "This is not a case where the seller acted unreasonably or in bad faith." Id. at 1087.  The court's statement is hardly a pronouncement of a new bad faith test separate from the UCC unconscionability test. At most, it suggests that, under New Jersey law, a limitation of liability clause may be found unconscionable based on bad faith performance.  Unlike Chatlos, Texas law tests unconscionability not according to performance, but according to fairness of the terms and the relative bargaining power of the parties.  See Tex. Bus. & Com. Code § 2.302 (indicating that the appropriate point for measuring unconscionability is when the contract was made); Arkwright-Boston Mfrs. Mut. Ins. Co., 844 F.2d 1174, 1184 (5th Cir. 1988)(explaining that the test of unconscionability examines whether the terms of the contract are oppressive and whether the parties had unequal bargaining ability).

A 1988 Central District of Illinois case is also mentioned in the Memorandum and Order.  There, without accepting either the dependent or independent view as the proper interpretation of the Illinois UCC provisions on limited warranty and limited liability clauses, the court employed a case-by-case analysis of the

consequential damages limitation that depended "on the characteristics of the transaction and how the parties sought to allocate risks." Cole Energy Dev. Co. v. Ingersoll-Rand Co., 678 F.Supp. 208, 211 (C.D. Ill. 1988).

The court offered two paradigmatic examples, purportedly from opposite ends of the spectrum, and concluded that, under one of the exemplary circumstances (and similar circumstances), "a court would be more inclined to strike the consequential damages exclusion." Id. at 211-12. The example from that end of the spectrum involved a consumer sale of standardized parts in which the failure of the limited remedy left the buyer without any remedy and the seller was willful or dilatory in meeting its warranty obligations. Id. The court concluded that, in the case before it, the parties were of equal bargaining power, the agreements imposed duties and granted rights equally, the agreements included another remedy, and the seller did not act willfully or dilatorily. Id. at 212. Any value this case may have for application to the facts sub judice is weakened by at least four distinctions: 1) the imposition of a case-by-case analysis in the Illinois case when this court has selected the independent approach; 2) the lack of any clear rule that can be applied to facts other than the specific examples cited; 3) the equivocal application to its own examples (as illustrated by the court's phrase "would be more inclined"); and 4) the application of non-Texas law.

The most recent opinion cited in the Memorandum and Order is Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752 (1st Cir. 1996). This case has no relevance to the present case because the decision is based explicitly on a statement of Massachusetts law[5] unlike any under Texas law.  The First Circuit stated:

> Napco's warranty excludes liability for consequential damages.  By its terms, this damages limitation provision bars Cambridge Plating from recovering consequential damages and, *under usual circumstances, would be enforceable.  Massachusetts law provides, however, that the damages limitation provision is not enforceable if Napco either willfully repudiated or was willfully dilatory in performing its warranty obligations.*

Id. at 768.

Much more convincing than these cases is the body of Texas law enforcing limitation of liability agreements between contracting parties and the clear language of the Texas UCC that such agreements should be enforced unless they are unconscionable.  See Tex. Bus. & Com. Code § 2.719(c); Global Octanes Tex., L.P., 154 F.3d at 521; Head; 159 S.W.3d at 747-48.  Therefore, the court reverses the prior decision on this issue and finds that the contractual limitation of liability clause is enforceable, even in the presence of evidence of bad faith, willful dilatoriness, and/or repudiation.

---

[5]     The court actually relies on dicta from another case, rather than some established principle of Massachusetts law.  See Cambridge Plating Co., 85 F.3d at 768 (citing Canal Elec. Co. v. Westinghouse Elec. Corp., 548 N.E.2d 182, 186 (1990)).

**String-Along Fraud**

To succeed on a fraud cause of action, a plaintiff must prove:

(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001). Some Texas authority allows a plaintiff to pursue a fraud action based on allegations that the other party to a contract made a knowingly fraudulent misrepresentation to induce that performance. Kajima Int'l, Inc. v. Formosa Plastics Corp., 15 S.W.3d 289, 293 (Tex. App.–Corpus Christi 2000, pet. denied) . Where a party has a duty to disclose information, an action may lie for fraud by omission or nondisclosure. Manon v. Solis, 142 S.W.3d 380, 387 (Tex. App.–Houston [14th Dist.] 2004, pet. denied).

In this case, Plaintiff claims that Defendant had both a contractual duty and a common-law duty to provide Plaintiff with current patches for the software and to inform Plaintiff of the condition of the software. According to Plaintiff's allegations, Defendant failed to disclose the defective condition of its software for the specific purpose of enticing Plaintiff to install and use the newest version and, thus, to remain a customer of Defendant.

14

The Memorandum and Order denied Defendant's no-evidence summary judgment motion on Plaintiff's allegations of fraud because Plaintiff produced some evidence in support of a string-along fraud claim.  This court agrees with the decision.  In order to succeed at trial, Plaintiff will need to prove either that Defendant had a duty to disclose problems with the software and failed to do so or that Defendant made a material false representation about the software's functionality.  It will also need to prove that the omission or false representation was intended to entice Plaintiff to upgrade its software, that the information was material to Plaintiff's decision to upgrade and relied upon by Plaintiff, and that Plaintiff suffered an injury as a result of Defendant's omission or false representation.

## IV.  Conclusion

Based on the foregoing, the court reverses the Memorandum and Order on the issue of a bad faith test for the effectiveness of a consequential damages limitation.  In all other respects, the prior decision stands.  Accordingly, the jury will be asked to decide Plaintiff's breach of express warranty and breach of contract claims with the limitation that only direct damages may be awarded and to decide Plaintiff's string-along fraud claim.

**SIGNED** in Houston, Texas, this 12th day of December, 2005.

_____
Nancy K. Johnson
United States Magistrate Judge

15